Dorothy **HANCOCK,** Plaintiff-Appellant,

v.

**MONTGOMERY WARD LONG TERM DISABILITY TRUST, an Illinois corporation, Defendant-Appellee.**

No. 84–4201.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1985.

Decided April 17, 1986.

Thomas A. Caruso, Portland, Or., for plaintiff-appellant.

Jeffrey Batchelor, Richard C. Hunt, Paula B. Weiss, Spears, Lubersky, Campbell, Bledsoe, Anderson, & Young, Portland, Or., for defendant-appellee.

Before SKOPIL and FLETCHER, Circuit Judges, and REED,* District Judge.

SKOPIL, Circuit Judge:

Plaintiff-appellant Dorothy Hancock ("Hancock") appeals the grant of summary judgment against her in this action to recover contractual benefits under an employee benefit plan administered by defendant-appellee Montgomery Ward Long Term Disability Trust ("Trust"). Hancock had also sought extracontractual damages allegedly caused by the Trust's denial of benefits. We affirm.

* The Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

## FACTS AND PROCEEDINGS BELOW

Hancock is a former employee of Montgomery Ward. In 1978 she began receiving medical treatments for back pain. She left work that same year and never returned. She alleges total disability from an arthritic disorder diagnosed as ankylosing spondylitis that causes severe pain in her back, shoulders, wrists, hips, and knees.

While an employee at Montgomery Ward, Hancock participated in the Montgomery Ward Long Term Disability Plan ("plan"). The Trust was established to receive contributions from employees and pay benefits to disabled employees. Disability benefits are paid under a two-tier system. Benefits are paid up to twenty-four months to employees unable to return to their former jobs. After twenty-four months, disability benefits continue only to those employees who can show they are unable to engage in any substantial gainful activity for which they are or might become qualified to perform. The plan pays no disability benefits if total disability was caused by or resulted from a "mental or nervous disorder" unless the employee is institutionalized.

Disability benefit decisions are made by the Benefit Plans committee which is given broad authority and responsibility for the administration and interpretation of the plan. The plan contains detailed provisions concerning claims procedures, including time limitations and processes. The committee is required to give written, specific reasons for disability decisions.

When Hancock did not return to work in 1978, the Trust paid her temporary, short-term disability benefits. In March 1979 she began receiving benefits under the twenty-four month provision. At that time her treating physician, Dr. Schoepflin, diagnosed "possible spondylitis with peripheral arthritis association with inflammatory bowel disorder." He opined she was unable to return to her previous work, but might be capable of sedentary work that allowed for frequent movement.

In May 1979 Dr. Schoepflin again reported to the Trust that Hancock continued to have "arthritic complaints." In July 1980, in response to the Trust's inquiry, Dr. Schoepflin declared Hancock was not totally disabled from any and all types of work. He thought her to be a suitable candidate for rehabilitation.

Meanwhile, Hancock unsuccessfully applied for social security disability benefits. She reapplied in October 1980 and was finally awarded benefits after hearings in October 1981. The Administrative Law Judge's opinion referred to Hancock's physical disabilities, vocational studies, and psychogenic difficulties, but did not indicate any particular basis for the award.

In addition, during this time Hancock applied for and was denied aid for retraining by the state Vocational Rehabilitation Division. The state concluded she was "unfeasible" for its services because letters from her treating physician indicated she was "unable to become gainfully employed." Upon learning of this denial of services, the Trust again wrote to Dr. Schoepflin requesting additional information on his opinion of Hancock's disabilities. He responded that if she had no stress in her life and had a job that did not demand prolonged sitting or stooping and bending, she might be able to work. He doubted, however, her life would ever be stress-free or such an ideal job was available to her without retraining.

The Trust requested clarification. Dr. Schoepflin responded that Hancock continued to suffer from fibromyositis. He opined if she were neither anxious nor depressed, the symptoms of fibromyositis would improve sufficiently to allow her to work.

In March 1981 Hancock was examined by Dr. Borman, an orthopedist who diagnosed "minimal degenerative osteoarthrosis." He recommended she return to some form of vigorous activity because there was no "orthopedic contraindication to such activity."

In March 1981, when the twenty-four month disability period ended, the Trust wrote to Hancock:

It is our Medical Board's opinion, based on all available information, that the evidence presented does not provide substantiation that you are totally disabled as required under the Plan after the twenty-fourth (24) month of disability. Therefore, we are unable to provide benefits after March 30, 1981.

The letter advised her she could seek review of the decision with the Trust's administrative director. Hancock requested such review and forwarded a copy of Dr. Schoepflin's latest report in which he certified Hancock was unable to work for at least sixty days. Dr. Schoepflin thought with "rest and time we may release for light clerical work in non-stressful situation."

In apparent response to Hancock's request for review of the Trust's decision, the Trust requested her to obtain an independent evaluation from another orthopedic surgeon, Dr. Berselli. Dr. Berselli reported Hancock's "symptoms were rather minimal in nature. She is limited to some degree by her back pain." The Trust asked for clarification and specifically inquired whether Hancock could engage in sedentary work. In response Dr. Berselli advised she "would be able to do sedentary-type work without any difficulty."

The Trust again denied Hancock's claim on the ground she was not totally disabled. She was advised she could seek a second and final review of the decision. She again appealed and added to her application the denial of aid from the state Vocational Rehabilitation Division and another employability report from Dr. Schoepflin. Dr. Schoepflin again diagnosed fibrositis and commented he believed a suitable job without emotional stress did not exist. On December 16, 1981 the Trust again denied her application for benefits.

After this final rejection, Hancock received notification she had been awarded social security benefits. The Trust was immediately notified. On January 5, 1982 the Trust responded "the Social Security decision has no bearing on whatever our decision might be." Shortly thereafter this action was filed in district court. In March 1983 the Trust sent Hancock's file to a vocational rehabilitation service for a "hypothetical evaluation" of Hancock's vocational options. The service reported a person with her level of disability could engage in any of several enumerated sedentary occupations. Additionally, after this action was filed, the Social Security Administration concluded Hancock was entitled to continue receiving benefits. An Administrative Law Judge found Hancock suffered from "severe psychogenic and orthopedic impairments which have significantly limited her from performing work-related activities...."

Plaintiff's initial complaint alleged claims for breach of contract, unlawful insurance practices under state law, and outrageous conduct under state law. Discovery was ordered to be completed by March 27, 1984. On February 13, 1984 defendant filed its first motion for summary judgment contending, inter alia, that Hancock's claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982). Hancock agreed and sought permission to file an amended complaint. The motion was heard and allowed after the discovery cutoff date.

Hancock's amended complaint alleged the Trust violated ERISA by (1) not providing specific reasons for denying her application; (2) ignoring evidence in the record in making its decision; and (3) arbitrarily and capriciously placing the blame for plaintiff's disabilities on psychological problems. She requested additional discovery. The Trust refused the discovery request. Hancock thereafter filed motions for a new discovery cutoff, a date for lodging of the pretrial order, and to compel discovery. Two days later the Trust filed its second motion for summary judgment. The Trust also sought to stay consideration of Hancock's motion to reopen discovery pending a ruling on its motion for summary judg-

ment. The court granted the motion to stay.

The district court granted the Trust's motion for summary judgment on the grounds that the denial of benefits was not arbitrary or capricious, was supported by substantial evidence, and was not made in bad faith. Hancock's discovery motion was thereby rendered moot. On appeal, Hancock contends the district court erred by (1) not allowing her to reopen discovery and (2) concluding the Trust did not wrongfully deny her benefits.

## DISCUSSION

### 1. Discovery.

When a party opposing a motion for summary judgment cannot present "facts essential to justify his opposition" to the motion, Fed.R.Civ.P. 56(f) allows the party to submit an affidavit stating such reasons. *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir.1980). The court may order a continuance to permit additional discovery. *Id.* The trial court's refusal to permit further discovery is reviewed for an abuse of discretion. *Landmark Development Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir.1985) (per curiam).

■ We conclude the trial court did not abuse its discretion in denying additional discovery pursuant to Rule 56(f).[1] The court had granted several discovery extensions. When Hancock moved to file her third amended complaint she stated the

amendment would not prejudice the Trust because "no new evidence would be required to try the case."

Nevertheless, Hancock contends additional discovery was necessary to support the new allegations of her third amended complaint by determining the motivations, interpretations and basis for the Trust's decision. We disagree. The complete medical record and the documentation of the Trust's responses to Hancock's application for benefits were available to her. The only possible justification for additional discovery would have been to support Hancock's demand for extracontractual damages. But the Supreme Court's decision in *Massachusetts Mutual Life Insurance Co. v. Russell*, — U.S. —, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), casts doubt on the availability of such relief under ERISA. In *Russell* the Court held that extracontractual damages are not available to a participant or beneficiary under 29 U.S.C. § 1132(a)(2) (1982). That section authorizes a civil action "for appropriate relief under section 1109" which provides liability for breach of fiduciary duty. Whether extracontractual and punitive damages are available under section 1132(a)(3) for "other appropriate equitable relief" was expressly reserved by the Court. *Id.* 105 S.Ct. at 3089, n. 5. Despite the reservation, the Court reasoned that the civil enforcement provisions found in section 1132(a) were exclusive and in broad language suggested fiduciaries cannot be held personally liable to beneficiaries for extra-

---

1. The Trust argues Hancock failed to comply with the requirements of Rule 56(f). An opposing party has the burden under Rule 56(f) to show what facts she hopes to discover to raise an issue of material fact. *Taylor v. Sentry Life Insurance Co.*, 729 F.2d 652, 656 (9th Cir.1984) (per curiam). An affidavit by counsel which does not do so fails to meet the requirements of Rule 56(f). *See Avila v. Travelers Insurance Co.*, 651 F.2d 658, 660 (9th Cir.1981). The Trust asserts Hancock merely stated more discovery was needed to respond to the motion for summary judgment.

We conclude Hancock's opposition to the Trust's motion for summary judgment was sufficient to raise Rule 56(f) consideration. Her response clearly requested such relief. Her

counsel's affidavit refers to her pending motion to compel discovery and to the fact she requested the Trust to respond to interrogatories and to provide certain witnesses for depositions.

In *Program Engineering*, 634 F.2d at 1193, plaintiff opposed summary judgment by filing a motion to strike parts of defendant's motion. Plaintiff did not submit any affidavits pursuant to Rule 56(f) or move for a continuance to allow for additional discovery. *Id.* Nevertheless, we concluded "the motion to strike was sufficient to raise in the lower court the issue whether Program Engineering was entitled to additional discovery." *Id.* Similarly, here, plaintiff's opposition, affidavit, motion to compel discovery, interrogatories, and request for witnesses are adequate to raise Rule 56(f) consideration.

contractual damages. *Id.* at 3092–93. The reasoning of the Court suggests that extracontractual damages should be unavailable under section 1132(a)(3) as well. The language of section 1132(a)(3) providing for "equitable relief" to enforce the provisions of ERISA supports this view in that extracontractual damages against a fiduciary are not an available form of "equitable relief." *See Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419, 424 (4th Cir.1985) (holding independent of *Russell* that section 1132(a) does not provide for extracontractual or punitive damages); *see also Award Service, Inc. v. Northern California Retail Clerks Union,* 774 F.2d 1391, 1391 (9th Cir.1985) (stating in dicta that "ERISA provide[s] various express remedies for a beneficiary, but compensatory and punitive damages against a trustee [are] not among them."). We conclude the court did not err in not reopening discovery.

**2. Summary Judgment.**

Summary judgment is proper only if there is no genuine issue of material fact and the moving party should prevail as a matter of law. *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985). We apply the same standard as did the district court. *Id.* That standard is whether the Trust's decision to deny benefits was (1) arbitrary and capricious; (2) not supported by substantial evidence in the record; or (3) erroneous on a question of law. *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1093 (9th Cir. 1985).

The trial court reviewed the medical evidence in this case. Although some evidence supported Hancock's claim of disability, such evidence was contradicted. The court concluded the evidence supporting Hancock indicated her disability was primarily a physical reaction to stress, thus implying Hancock's claim would fail under the plan's exclusion of mental or nervous disorders not requiring institutionalization.

Hancock does not directly attack the weight of medical evidence tending to show she is not totally disabled. Instead, she argues her claim was not timely processed, she was not given adequate justification for denial of benefits, and the trustees have not disclosed how they have interpreted certain plan definitions and eligibility procedures.

Trustees' decisions are not to be arbitrary and capricious. A refusal to accept an application or to act on a request for benefits would prevent a reviewing court from determining whether substantial evidence supports the trustees' decision. Despite the deference owed to administrators of plans which, like this one, confer broad powers to determine eligibility for benefits, *see Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 655 (9th Cir.1981), decisions rendered without any explanation, or application of plan provisions clearly in conflict with the plain language of the plan, should be found to be arbitrary and capricious. *See Motor Vehicle Manufacturers Ass'n, Inc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (a decision is arbitrary or capricious when the decisionmaker relies on improper factors, offers an explanation counter to the evidence, or is so implausible it cannot be ascribed to a difference of opinion). This is not the case here.

■ The record shows the Trust promptly responded to Hancock's application and inquiries. While the Trust may not have strictly complied with the time limitations found in 29 C.F.R. § 2560.503–1(h)(1)(i) (1985), "[n]othing in the regulations or in the statute ... expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits." *Russell,* 105 S.Ct. at 3091.

■ On several occasions the Trust issued written denials of benefits in which it explained the medical evidence presented to the committee showed Hancock was not disabled. The requirements for the content of notices denying claims for benefits are set out in 29 C.F.R. § 2560.503–1(f) (1985).

Even were we to assume that the Trust failed to strictly comply with this regulation, summary judgment was still appropriate on the facts of this case. Substantive remedies are available for procedural defects under ERISA only when the defects "caused a substantive violation or themselves worked a substantive harm." *Ellenburg,* 763 F.2d at 1096. Hancock points to no prejudice to her from the alleged inadequacy of the letters, and we see none. Because there was substantial evidence to support the Trust's decision, a remand merely to require the Trust to send a more detailed letter "would be a useless formality," *id.,* accomplishing nothing.

■ Hancock complains she does not know how the committee defined "total disability" in this case or how it applied the mental or nervous disorder exception. But, the Trust in its first denial of benefits wrote Hancock that "the Plan defines total disability as the inability to engage in any gainful employment for which you are now qualified, or may reasonably become qualified. The definition of 'qualified' is based on your education, training, and experience." Under ERISA, where provisions are susceptible to more than one interpretation, we may not substitute our judgment for that of the Trust. *Jung,* 755 F.2d at 712.

We agree the Trust did not define its understanding of the mental or disorder exception. Nonetheless, in none of its denials of benefits to Hancock did the Trust rely on that exception. Only after its final denial and in response to Hancock's notification of her social security award did the Trust mention the exception. In a January 5, 1982 letter the Trust thanked Hancock for supplying additional information and noted the social security decision had no impact on the Trust's decision. The administrator commented:

In reviewing the information contained in the administrative law judge's decision, I have noticed the mention of strong psychological problems regarding your disability. While these problems may in fact be disabling, the ... Plan only provides benefits for disabilities arising out of those conditions only if the employee claiming disability is hospitalized or institutionalized....

Thus, while the administrator did comment on the exception, the Trust did not base its denial on that provision.

■ In summary, *de novo* review of the record before us shows substantial evidence supports the Trust's determination that Hancock did not meet the plan's requirements for total disability benefits. Every physician, including her treating physician, opined she could engage in sedentary employment. The Trust's decision was not arbitrary or capricious or contrary to law. Reasonable interpretations of ERISA plans are not arbitrary or capricious. See *Smith,* 654 F.2d at 656. Trustees are given wide discretion "short of plainly unjust measures" to decide questions of eligibility. *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 542 (9th Cir.1980) (*quoting Sailer v. Retirement Fund Trust,* 599 F.2d 913, 914 (9th Cir.1979)). We are accordingly reluctant to substitute our judgment for that of the Trust and "will do so only if the actions of the trustees are not grounded on any reasonable basis." *Ponce,* 628 F.2d at 542.

AFFIRMED.[2]

---

2. The Trust argues the district court erred in concluding Hancock's ERISA action was timely filed. The Trust urges us to review this argument as an alternative ground in support of affirming the judgment below. While we may affirm on any basis in the record, *United States* *v. State of Washington,* 641 F.2d 1368, 1371 (9th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982), we need not rely on this alternative argument to affirm the decision below.