78 F.3d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Wilburn MENEFIELD, Plaintiff-Appellant,
v.
D.J. HELSEL; T. Jewell; V. Baker; L. Anderson; S.E.
Rodriguez; Charles D. Marshall, et al.,
Defendants-Appellees.
 No. 94-16036.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 17, 1995.
Decided March 12, 1996.
 
 Before: NORRIS, BEEZER and TROTT, Circuit Judges:
 
 
 1
 MEMORANDUM*
 
 
 2
 James Menefield, a California state prisoner, sued several state prison officials under 42 U.S.C. § 1983. Menefield alleges the officials deprived him of due process by terminating his work assignment and retaliated against him for exercising his First Amendment right to file grievances. The district court granted summary judgment to all defendants, and Menefield timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 FACTS
 
 3
 In 1991, Menefield was an inmate of Pelican Bay State Prison assigned to work as a clerk in the prison's law library. The defendants are all officials who worked at the prison.
 
 
 4
 In April 1991, the prison went on an emergency lockdown. On May 6, 1991, Defendant Program Administrator D.J. Helsel issued a memorandum stating that certain prisoners would be returned to their normal activities and recreation while others would remain on the emergency program. That day Menefield approached Helsel to ask whether he would be returned to the normal program. Helsel told Menefield that he would not, and advised Menefield to file an inmate appeal if he did not agree with the terms of the lockdown.
 
 
 5
 Menefield prepared an inmate appeal while at work, and tried to hand Helsel the appeal form. Helsel refused to take it, telling Menefield to send it through the proper institutional mail. Helsel then asked Menefield if he had prepared the appeal while at work, and Menefield said that he had. Helsel directed Defendant T. Jewell, the senior law librarian, to write a rules violation report charging Menefield with conducting personal business on state time in violation of the California Code of Regulations.[1] Jewell's report requested that Menefield be "unassigned" from his position as law library clerk. When Menefield asked Helsel if he was being removed from his job because he filed an appeal, Helsel allegedly replied, "If you don't shut your fucking mouth, more will happen to you than just losing your job."
 
 
 6
 Helsel directed Defendant Correctional Officer L. Anderson to take Menefield to his cell. Menefield claims that while walking him to his cell, Anderson said, "It is now just a matter of time and you brought it all on yourself." Menefield asked if that was a threat, and Anderson responded, "Take it any way you want." Anderson filed an informative counseling chrono documenting the incident between Menefield and Helsel. The chrono states that Menefield "was attempting to incite the other inmates into the conflict"; Menefield denies this. In addition to a summary of the events, Anderson wrote that Menefield attempted to manipulate staff by threatening them with appeals, used false allegations of racism in his appeals and had become a threat to the security of the law library and education departments.
 
 
 7
 Defendant V. Baker, the supervisor of correctional educational programs, filed a chrono on Menefield on May 7, 1991. The chrono stated that Menefield filed three appeals within a few days and that Menefield overused the appeal process to manipulate and harass the staff. Defendant Appeals Coordinator S.J. Borrego wrote Menefield a memorandum on May 8, 1991, stating that Menefield was abusing the appeals system by submitting more than two appeals per week and by duplicating appeals. Borrego's memorandum requested Menefield to decide which, if any, appeal he wished to submit, and warned him he would be placed on appeal restriction if he continued to abuse the appeal system. Menefield alleges that Borrego did not file his appeals against Helsel and Baker as required.
 
 
 8
 On May 22, 1991, Defendant Lieutenant Correctional Officer S.E. Rodriguez presided over a hearing regarding the library incident. Rodriguez received copies of the chronos filed by Anderson and Baker, as well as Jewell's report. At the hearing, Menefield's supervisors testified that they had given Menefield permission in the past to prepare and file appeals during work hours and did not know that it was a violation of the rules to do so.
 
 
 9
 While working, Menefield had been allowed two fifteen minute breaks a day. Menefield alleges that he prepared the form while on break, in less than five minutes. Menefield testified, "I did write the 602 but at the time I was caught up with my work. Nobody told me I couldn't do it and I have done it in the past." Rodriguez found Menefield guilty of violating the rules against conducting personal business on state time. Her finding assessed Menefield thirty days of work credit and recommended that he not be reassigned to a work assignment.
 
 
 10
 Both before and after the May 6 incident, Menefield had written several letters to Defendant Charles D. Marshall, warden of Pelican Bay, complaining of harassment and fear of retribution by Anderson, Baker and Helsel and requesting that Marshall rescind Rodriguez's ruling. Marshall sent a letter to Menefield advising him to use the appeals system and did not respond to Menefield's later letters.
 
 
 11
 On May 22, 1991, defendant Correctional Sergeant E.M. Powers interviewed inmate Charles Davis regarding a letter Davis had written to his mother asking for $50 to pay Menefield for legal work. Powers allegedly told Davis that Menefield had "stepped on a lot of toes" and "had a run-in with the Program Administrator and we've got his ass this time." Based on Powers' report, Menefield was issued a rules violation report charging him with accepting payment for legal work.
 
 
 12
 Menefield filed a 42 U.S.C. § 1983 claim alleging that defendants retaliated against him for filing inmate appeals by removing him from his work assignment and revoking its attendant privileges. Menefield alleged defendants violated the First Amendment, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and conspired to violate his constitutional rights; in addition, he claimed defendants violated § 1981 by discriminating against him on the basis of race. In an order dated December 9, 1991, the district court dismissed most of Menefield's claims.[2] On April 2, 1992, Menefield moved for a status or scheduling conference pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Northern District Local Rule 235-3.
 
 
 13
 In an April 2, 1993 order, the district court found that Menefield's amended complaint stated a cause of action for claims against Helsel, Baker, Anderson, Rodriguez, Marshall, Borrego and Powers.[3] On May 25, 1995, the district court granted summary judgment for all defendants. Menefield timely appeals.
 
 ANALYSIS
 
 14
 We review a grant of summary judgment de novo. Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir.1994). The district court's discovery rulings are reviewed for an abuse of discretion. Sopcak v. Northern Mountain Helicopter Service, 52 F.3d 817, 818 (9th Cir.1995).
 
 
 15
 * Prisoners have a First Amendment right to be free from retaliation for participating in "protected speech activities." Pratt v. Rowland, 65 F.3d 802, 806 & n. 4 (9th Cir.1995). We have held that prisoners' constitutional right to access to the courts "extends to established prison grievance procedures." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995). Because Menefield has a right to file inmate appeals, prison authorities cannot penalize him for exercising this right. Id.
 
 
 16
 In order to succeed on his § 1983 retaliation claim, Menefield must show the officials' retaliation was a result of his exercising his First Amendment rights. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). Menefield also must allege that the "retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."[4] Id. Contrary to Menefield's assertions, Menefield "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806 (emphasis added). If Menefield meets these burdens, the prison officials must establish that they would have reached the same decision even in the absence of protected conduct. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).
 
 
 17
 In light of Sandin v. Conner, 115 S.Ct. 2293 (1995), we recently reexamined the validity of retaliation cases. Pratt, 65 F.3d 802. While reaffirming the retaliation cause of action, we stated that the "general tenor" of Sandin, which disapproved of "excessive judicial involvement in day-to-day prison management," applied to retaliation cases. Pratt, 65 F.3d at 807 (citing Sandin, 115 S.Ct. at 2299). When considering prisoner's allegations of retaliation, we will " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. (quoting Sandin, 115 S.Ct. at 2299).
 
 
 18
 A reasonable jury could find that the prison officials' actions were motivated by retaliation for filing inmate appeals. Menefield has not shown, however, "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. In light of Pratt and Sandin, Menefield cannot meet this burden merely by claiming defendants retaliated against him. Menefield's bare assertion that the actions complained of "are not related to prison order or discipline" is not enough to satisfy Menefield's burden to show there were no legitimate penological goals supporting the officials' actions.
 
 
 19
 Helsel and Jewell have asserted a plausible penological goal for their actions: not wanting prisoners to do personal work while on state jobs. The undisputed facts show that Helsel told Menefield to file an appeal if he did not like the terms of the lockdown. It was only when Menefield told Helsel that he had prepared the appeal form while working at his prison job that Helsel instructed Jewell to file a report. The fact that Jewell had allowed Menefield to prepare appeals on work time before this incident is irrelevant; the undisputed testimony shows that Jewell did not know that it was a violation of prison policy to do so until Helsel directed her to file the report.
 
 
 20
 Anderson declared that he filed a chrono describing the incident between Menefield and Helsel because it was "customary institutional policy." Documenting a skirmish between an inmate and a prison official is a legitimate goal. Facts in the report which were additional to the incident, e.g., that Menefield "attempts to manipulate staff by threatening them with the 602 Appeal system [and] ... uses false allegations of racism in his Appeals," are legitimate background information to that report.
 
 
 21
 All of the other defendants also have shown legitimate reasons for their actions. Powers filed his report against Menefield based on a letter from another inmate requesting money to pay Menefield for legal work done. Prison rules prohibit accepting money for legal work; if Menefield requested payment for legal work, that would be against prison rules.[5] Powers had a legitimate penological goal in reporting a possible violation of prison rules.
 
 
 22
 Finally, Menefield challenges restrictions placed on his use of inmate appeals. However, as the Eighth Circuit has stated, "[P]risoners must understand that if they abuse the system by repeatedly filing ill-founded grievances, reasonable limitations may be placed on their access to the procedure, just as reasonable limitations may be placed on prisoners' access to the courts when they abuse the judicial process by repeatedly filing frivolous claims." Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989). Baker states that she wrote the chrono to document Menefield's abuse of the appeal process. Similarly, Borrego's memo stated Menefield's appeals were being returned because they were duplicative (they were filed on the same day as other appeals, and on the same issues), and told him he would be put on appeals restriction if he continued to abuse the appeals system.
 
 
 23
 Menefield has failed to prove the lack of "legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806. All of the defendants have given legitimate, nonretaliatory reasons for their actions, and have denied any retaliatory motives. We must "afford appropriate deference and flexibility" in evaluating the proffered reasons, Pratt, 65 F.3d. at 807, and we affirm summary judgment for the prison officials on these claims.
 
 II
 
 24
 Menefield claims his due process rights were violated because the prison rules did not give adequate notice that writing appeals at work is prohibited. The void for vagueness doctrine only requires that the rule give "fair warning" of prohibited conduct. Colten v. Kentucky, 407 U.S. 104, 110 (1972). Here, Menefield was charged with violating a rule which states: "Inmates must perform assigned tasks diligently and conscientiously. Inmates must not pretend illness, or otherwise evade attendance and performance in assigned work and program activities, or encourage others to do so." Cal.Code Regs. tit. 15, § 3041(a). A reasonable person reading the rule would have fair warning that doing personal tasks while on state-paid work assignment violates this rule. That Menefield's supervisors had allowed him to prepare inmate appeals on work time before does not change this result because Menefield's and his supervisors' subjective beliefs are irrelevant to the due process inquiry. The fair notice requirement is determined by objective standards. United States v. Kozminski, 487 U.S. 931, 949-50 (1987).
 
 
 25
 Menefield also claims that Rodriguez's findings were not supported by "some evidence," as required by Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). We disagree. Rodriguez based her decision on Jewell's report charging Menefield with "ceas[ing] his regularly assigned duties" to prepare an inmate appeal and Menefield's own statements at the hearing that, "I did write the 602, but at the time I was caught up with my work. Nobody told me I couldn't do it and I have done it in the past." Although Menefield testified at the hearing that he wrote the appeal while on a work break, Rodriguez, as factfinder, was free to disbelieve this statement.[6] Because the finding was based on "some evidence," we will not reweigh Rodriguez's findings of fact. Hill, 472 U.S. at 455-56.
 
 III
 
 26
 Menefield cites Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984) for the proposition that Warden Charles Marshall is liable for not preventing the constitutional deprivations caused by his subordinates. Because the prison officials did not violate Menefield's constitutional rights, Marshall has no § 1983 liability.
 
 IV
 
 27
 Menefield asserts that any lack of evidence to support his claims resulted from the district court's error in refusing to allow him additional time for discovery. The district court's failure to address a Rule 56(f) motion before granting summary judgment is reviewed de novo. Qualls v. Blue Cross of Cal., 22 F.3d 839, 844 (9th Cir.1994).
 
 
 28
 Menefield did not file a Rule 56(f) motion, and we do not agree with Menefield's argument that his motion for a case management conference should be interpreted as a rule 56(f) motion. The case Menefield cites for this proposition, Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir.1987), does not support this argument. In Garrett, we held that the plaintiff's pending discovery motion, although not formally labeled a 56(f) motion, "was sufficient to raise the issue of whether he should be permitted additional discovery." Id. at 1518-19. Here, Menefield's motion only requested a "status or scheduling conference" pursuant to Federal Rule of Civil Procedure 16(b) and Northern District Local Rule 235-3.[7] This request would not give the district court notice that one year later Menefield would need additional time to complete discovery. Additionally, even if Menefield could prove his request should be considered a Rule 56(f) motion, the motion was deficient as a matter of law.[8]
 
 V
 
 29
 Finally, Menefield argues that the district court erred in granting summary judgment without first addressing his claims of racial discrimination and conspiracy. Menefield bases this assertion on the reading of the district court's April 1993 order, which followed Menefield's amended complaint. The April order did not say that the amended complaint stated claims for racial discrimination and conspiracy; it merely stated that Menefield "has stated cognizable claims in accordance with the Court's instructions set forth in the December 9, 1991 Order." The court's December 1991 order dismissed the discrimination and conspiracy claims with leave to amend, while finding Menefield had stated retaliation and due process causes of action.
 
 
 30
 Reading the April order in its entirety, we are convinced the district court did not revive the discrimination claims. The district court correctly refused to reinstate the discrimination claims because Menefield's amended complaint added no facts to support these claims.
 
 
 31
 Menefield's amended complaint added allegations to bolster the conspiracy claims. It alleged: that Baker sent a copy of the chrono to Helsel, who according to prison rules should not have received a copy of it, demonstrating "a meeting of the minds"; that Helsel caused Powers to interview Davis in an attempt to retaliate against Menefield for filing prison appeals against Helsel; and that the defendants "collaborated to issue plaintiff numerous write-ups for filing appeals and as retaliation for filing appeals in the past."
 
 
 32
 Assuming the April order revived the conspiracy claims, the court did not err in granting final judgment. Although the court did not specifically address the conspiracy claims in its summary judgment order, it granted summary judgment on all of Menefield's underlying claims. A conspiracy allegation does not give rise to § 1983 liability unless there is an actual deprivation of civil rights. Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir.1989) (citing Singer v. Wadman, 595 F.Supp. 188 (D.Utah 1982), aff'd, 745 F.2d 606 (10th Cir.1984), cert. denied, 470 U.S. 1028 (1985)). There is no such thing as a conspiracy to commit lawful conduct. Menefield cannot survive summary judgment on the underlying claims, so his conspiracy claims must necessarily fail.
 
 
 33
 Because we affirm summary judgment for the prison officials on other grounds, we do not address the issue of qualified immunity.
 
 
 34
 We deny Menefield's request for attorneys' fees. We AFFIRM the grant of summary judgment for all defendants on all claims.
 
 
 35
 NORRIS, Circuit Judge, concurring in part and dissenting in part.
 
 
 36
 Menefield was removed from his job as a law library clerk on the ground that he had prepared a prisoner appeal during work time. He claims that this action was taken in retaliation for his filing of a prisoner appeal, a constitutionally protected activity. He also claims that the prison regulations did not give adequate notice that his conduct was prohibited. I dissent from the majority's affirmance of summary judgment as to Menefield's retaliation claim and his Due Process claim. I concur in the remainder of the memorandum disposition.
 
 
 37
 * RETALIATION
 
 
 38
 The evidence, if credited, would support the following findings of fact:
 
 
 39
 1. Menefield was an inmate at the Pelican Bay State Prison assigned to work as a clerk in the law library [ER 22].
 
 
 40
 2. His primary duty at this job was to assist law library users by providing information on research techniques and use of legal materials. He also maintained the law library collection, compiled monthly collection statistics, maintained the typewriters, and performed other tasks assigned by the librarian [ER21].
 
 
 41
 3. Shortly before his removal, Menefield's work was evaluated by his work supervisor. He was graded "exceptional" in one area, "above average" in five others, and "satisfactory" in the remaining four. His supervisor stated that he was able to work with minimal supervision [ER 59].
 
 
 42
 4. On the day that he was removed from his assignment, he prepared a prisoner appeal while he was working at the law library. The preparation of the appeal took approximately five minutes [ER 2, 10]. He attempted to give the appeal form to defendant D.J. Helsel, the Program Administrator. Helsel refused to take the form, and asked Menefield if he had prepared the appeal while at work [ER 23]. Menefield said that he had [ER 53]. Because Menefield had written the appeal while at work, Helsel directed T. Jewell, the senior law librarian, to file a rules violation report charging Menefield with conducting personal business on state time [ER 54].
 
 
 43
 6. The prison regulations provide that "[i]nmates must perform assigned tasks diligently and conscientiously. Inmates must not pretend illness, or otherwise evade attendance and performance in assigned work and program activities, or encourage others to do so." Cal.Code Regs. tit. 15, § 3041(a).
 
 
 44
 7. Menefield did not fail to perform any assigned duty when he prepared the appeal.
 
 
 45
 The evidence that, if credited, would support the critical seventh finding of fact consists of Menefield's statements in his affidavit and declaration that he prepared the appeal when he had no library tasks to perform because he was caught up with all his assigned tasks [ER 10, 67, 69]. To be sure, the evidence is in conflict on this issue. The Rules Violation Report written by Jewell says that Menefield "ceased his normally assigned duties" when he prepared the appeal [ER57]. There is no evidence, however, that Jewell ever explained that statement--or even repeated it--in her testimony at Menefield's removal hearing. A trier of fact could interpret the phrase "ceased his normally assigned duties" to mean that Menefield was conducting personal business as distinguished from work-related business, not that he had an actual assigned duty that he was shirking at the moment he prepared the appeal. Thus, a conflict in the evidence exists on the issue whether Menefield's preparation of the prisoner appeal actually interfered with any assigned duty, but that conflict should be resolved at trial, not by summary judgment.
 
 
 46
 The foregoing evidence raises a genuine issue of material fact as to whether Menefield has carried his "burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995). The evidence now in the record would permit a trier of fact to determine that Helsel and Jewell's assertion of a legitimate correctional reason for their action, namely, "not wanting prisoners to do personal work while on state jobs" [majority disposition at 8], is not credible. It arguably defies common sense for prison officials to require a library clerk who has finished all of his assigned tasks to sit idly while he awaits his next assignment. According to the defendants' reasoning, a library clerk would be prohibited from reading a book, writing a letter, or otherwise making any productive use of his time even though he may be caught up with his assigned work.
 
 
 47
 Because the majority concedes that Menefield has raised a triable issue of fact as to the first element of his retaliation claim--"that the prison officials' actions were motivated by retaliation for filing inmate appeals" [majority disposition at 7]--the summary judgment should be reversed because Menefield has raised a triable issue of fact as to the second element of his claim--the absence of legitimate correctional goals.
 
 II
 DUE PROCESS
 
 48
 Menefield also challenges his removal as a violation of Due Process, arguing that the prison rule did not give adequate notice that writing a prisoner appeal at work is prohibited. The rule provides only that "[i]nmates must perform assigned tasks diligently and conscientiously. Inmates must not pretend illness, or otherwise evade attendance and performance in assigned work and program activities, or encourage others to do so." Cal.Code Regs. tit. 15, § 3041(a).
 
 
 49
 The rule does give adequate notice that neglecting an assigned task can result in removal. However, the rule says nothing about how inmates may use their idle time when they are caught up with their assigned tasks. It addresses only the manner in which they must perform the duties that are assigned to them. Thus, the rule provides no notice that a prisoner faces removal for engaging in personal activities during periods when all assigned tasks have been "diligently and conscientiously" completed. Id.
 
 
 50
 Menefield's reading of the prison rule is further buttressed by the testimony of three witnesses, including Menefield's supervisor and the senior librarian, who stated that they did not understand the rule to prohibit inmates from conducting personal business while at work. The majority's response--that Menefield's and his supervisors' subjective beliefs are irrelevant to the due process inquiry [majority disposition at 10]--misses the point of this evidence. Menefield offers this evidence to support his claim that a reasonable person reading this rule would not be put on notice that she was prohibited from taking care of her personal matters in a way that would not interfere with her performance of her assigned tasks. The fact that the officials who were charged with the enforcement of the rule did not understand it to prohibit Menefield's conduct is evidence that a reasonable prisoner such as Menefield would not so understand it either. Accordingly, I would also reverse the summary judgment on the Due Process claim.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The regulation states: "Inmates must perform assigned tasks diligently and conscientiously. Inmates must not pretend illness, or otherwise evade attendance and performance in assigned work and program activities, or encourage others to do so." Cal.Code Regs. tit. 15, § 3041(a) (1991)
 
 
 [2]
 The district court found that Menefield had stated a due process claim against Rodriguez and claims against Anderson, Baker and Helsel for violation of his First Amendment rights. Menefield's equal protection claims were dismissed without leave to amend. The court also dismissed without leave to amend the due process claims against all defendants except Marshall. The due process claim against Marshall and all of Menefield's other claims were dismissed with leave to amend
 
 
 [3]
 The April order did not state which claims survived against the remaining defendants, but merely referred to the December 9 order. See footnote 2, supra, for a summary of that order
 
 
 [4]
 Typically, objections that an official action was not "narrowly tailored" address situations in which a prisoner challenges a regulation or statute as overly broad. See, e.g., Bradley, 64 F.3d at 1280-81; Witherow v. Paff, 52 F.3d 264, 265 (9th Cir.1995). That is not the case here
 
 
 [5]
 Defendants assert that rules prohibiting inmates from accepting money for legal work advance security concerns related to the debt collection methods used by prisoners
 
 
 [6]
 Because Menefield does not appear to have told Helsel he was on a break, Rodriguez may reasonably have concluded Menefield later fabricated that excuse
 
 
 [7]
 Rule 16(b) states:
 Scheduling and Planning. Except in categories of actions exempted by district court rule as inappropriate, the judge, or a magistrate when authorized by district court rule, shall ... enter a scheduling order that limits the time
 (1) to join other parties and to amend the pleadings;
 (2) to file and hear motions; and
 (3) to complete discovery....
 Fed.R.Civ.P. 16(b). Northern District Local Rule 235-3 is similar.
 
 
 [8]
 Menefield has the burden to show what facts he hopes to discover in order to raise an issue of material fact. Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n. 1 (9th Cir.1986). Although on appeal Menefield argues he needs further time, for example, to examine evidence of defendants' motives, he did not make this argument to the district court. He also failed to show why he could not have completed the needed discovery without the additional time requested in the Rule 56(f) motion. See Mackey v. Pioneer Nat. Bank, 867 F.2d 520, 524 (9th Cir.1989)