**Robert WARREN, et al.,**
**Plaintiffs–Appellants,**

v.

**SOCIETY NATIONAL BANK, et al.,**
**Defendants–Appellees.**

No. 89–3331.

United States Court of Appeals,
Sixth Circuit.

Argued March 15, 1990.

Decided June 22, 1990.

William D. Beyer (argued), George A. Vince, Jr., Wuliger, Fadel & Beyer, Cleveland, Ohio, for plaintiffs-appellants.

Michael E. Brittain (argued), Jeffrey L. Nischwitz, Calfee, Halter & Griswold, Cleveland, Ohio, for defendants-appellees.

Before WELLFORD and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This case arises under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (1982). The issue relates to damages recoverable by a participant or beneficiary against an administrator or other fiduciary of a retirement plan. More specifically, the question is whether a plan participant may recover damages for a plan fiduciary's failure to follow the participant's instructions, under

an option provided in the plan, for handling the participant's share of plan assets.

The district court held that such damages are not recoverable under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). We disagree.

## I.

Because the district court dismissed this action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we treat the factual allegations of the amended complaint as true.

Robert Warren, a physician, was employed by Westgate Medical Anesthesia Group and participated in two of the group's retirement plans—a pension plan and a profit sharing plan and trust. The Society National Bank (SNB) was trustee of both plans. Both plans provided several options under which a participant could withdraw his or her share of plan assets, including "Option 4: A single lump-sum payment."

Dr. Warren was advised that it would be advantageous for him to "roll over" his interests in the two retirement plans into a self-directed individual retirement account (IRA). Documents from the plans specifically allowed such a rollover as a means for continued deferral of income taxes on plan assets. In order to carry out the advice to cause a rollover from the retirement plans to the IRA, SNB was directed to transfer all of the assets in Dr. Warren's retirement plan accounts to the investment banking firm of Prescott, Ball and Turbine, Inc. (PBT). As of September 30, 1984, Dr. Warren's balance in the two plan accounts totalled $556,242. SNB transferred approximately $388,148 in two distributions to PBT on December 5 and 11, 1984. The balance of $168,094 was transferred on January 9 and May 23, 1985.

Dr. Warren filed suit in district court. His amended complaint charged that SNB's failure to transfer all of the assets in his retirement plan accounts to the IRA in calendar year 1984 constituted a breach of the trustee's fiduciary duty. The amended complaint alleged that, either through negligence or in order to earn additional fees

as trustee, SNB failed to distribute all of Dr. Warren's plan assets during a single calendar year. Under the Internal Revenue Code, the complaint alleged, the transfer to an IRA would have been a tax-free rollover if accomplished within a single calendar year. Because SNB failed to transfer all of the funds in 1984, that portion transferred in 1985 was subject to income taxes. Dr. and Mrs. Warren paid $74,476 to the Internal Revenue Service and $12,729 to the State of Ohio, all out of funds received from the retirement plans.

In addition, according to the amended complaint, the funds that SNB transferred in 1985 lost their eligibility for rollover treatment and could no longer be retained in the IRA. Thus, future income earned on these funds has lost the benefit of "the compunding effect of tax deferment" and will be taxed as received rather than at the time of ultimate distribution from the IRA. The amended complaint alleged that the loss of rollover treatment damaged Dr. Warren in the total amount of $375,430.

As a beneficiary of the plans and a joint filer, Mrs. Warren joined Dr. Warren as a plaintiff. They sued SNB and an employee of the bank responsible for management of the plans. For convenience we will refer to the plaintiffs collectively as Dr. Warren or the plaintiff, and the defendants as SNB or the bank.

## II.

### A.

In support of its motion to dismiss the amended complaint for failure to state a claim the bank filed a brief in which it argued that the plaintiff was seeking to recover "extra-contractual" damages, a type it claimed was not recoverable under any section of ERISA. The bank relied on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and a line of court of appeals decisions applying *Russell*. The bank argued that it had distributed all of Dr. Warren's assets and that his complaint sought no benefits due under the retire-

ment plans. ERISA provides only for recovery from a fiduciary of "contractual" damages, i.e., damages for failure to pay to a participant or a beneficiary funds or other benefits to which the participant is entitled under the terms of the plans.

Dr. Warren responded that his action for compensatory damages states a claim upon which relief can be granted because the damages it seeks are in fact "contractual." He equated contractual damages with "general" damages, and extracontractual damages with "special" damages, and asserted that the damages he sought were "general." Dr. Warren also attempted to distinguish *Russell* insofar as that case involved a delay in processing the plaintiff's claim for disability benefits in a situation where the plaintiff's entitlement to such benefits was disputed. The plaintiff in *Russell* sought punitive damages and compensatory damages for emotional distress and the cashing-out of the retirement savings of plaintiff's husband. Unlike *Russell*, in the present case Dr. Warren was fully vested in the retirement plan assets held by the bank, and he sought compensatory damages that flowed directly and proximately from the bank's failure to provide a contractual benefit, i.e., a single lump-sum distribution.

Dr. Warren filed copies of a "Summary Plan Description" for each plan. In addition to describing the plan and available optional settlements, each summary plan description contained the following statement:

(6) TREATMENT OF DISTRIBUTIONS Whenever you receive a distribution from the Plan, it will normally be subject to income taxes. However, you may reduce, or defer entirely, the tax due on your distribution through use of one of the following methods:

(a) The rollover of all or a portion of the distribution to an IRA or another qualified employer plan. This will result in no tax being due until you begin withdrawing funds from the IRA or other qualified employer plan. BUT, the rollover of the distribution MUST be made within strict time frames (normally, within 60 days after you receive your distribution). Further, under certain circumstances all or a portion of a distribution may not qualify for this rollover treatment.

(b) Subjecting the distribution to favorable income tax treatment under the "10 year forward averaging" or "capital gains" method of taxation.
WHENEVER YOU RECEIVE A DISTRIBUTION, THE PLAN ADMINISTRATOR WILL DELIVER TO YOU A MORE DETAILED EXPLANATION OF THESE OPTIONS. HOWEVER, YOU SHOULD CONSULT QUALIFIED TAX COUNSEL BEFORE MAKING A CHOICE.

### B.

The district court granted the bank's motion to dismiss on two grounds. First, the court held that the amended complaint did not allege sufficient facts to state a claim. The court stated that Dr. Warren did not allege that the terms of the summary plan descriptions explicitly imposed a duty on the bank to act within the calendar year. Further, the complaint did not allege that Dr. Warren advised the bank of the necessity of transferring ·all the funds during 1984, and "it is clear that the participant has the burden to instruct SNB concerning the particulars of his distribution before any duty could possibly arise on the part of the trustee to act accordingly." The court found nothing in the papers submitted by the plaintiff to suggest that it would be proper to infer a duty on the part of the bank to distribute Dr. Warren's retirement funds within one calendar year.

After granting the bank's motion on the basis of its finding that the amended complaint was defective, the district court proceeded to consider whether the damages claimed by Dr. Warren are recoverable under section 502(a)(3) of ERISA. The court discussed *Russell* and noted that it does not define "extracontractual" damages. Then, after noting that several courts have held that *Russell* precludes the recovery of extracontractual damages in actions brought pursuant to section 502(a)(3), the

district court stated that it agreed with those decisions.

The district court then determined that the damages sought by Dr. Warren for "tax and tax interest liability and loss of investment earnings" are extracontractual in nature. It reached this determination by relying principally upon the statement in *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), that damages sought by a plan participant in that case were extracontractual "in that the relief is not within the terms of [the] ERISA-governed benefit plan." The district court also concurred in the *Drinkwater* court's conclusion that "other appropriate equitable relief," as used in § 502(a)(3) is limited to injunctive or declaratory relief. The court found that its conclusions are fully supported by the common law of trusts.

### III.

### A.

In *Russell*, a beneficiary sought compensatory and punitive damages for the improper or untimely processing of her claim for employee disability benefits. 473 U.S. at 136, 138, 105 S.Ct. at 3087, 3088. The action was brought under section 502(a)(2) [1] of ERISA, 29 U.S.C. § 1132(a)(2), claiming a cause of action under section 409(a) [2], 29 U.S.C. § 1109(a). *Id.* at 138, 105 S.Ct. at 3088. The beneficiary sought compensatory damages for emotional distress and for the economic loss that resulted when the interruption of benefit payments allegedly forced the beneficiary's husband to cash out his retirement savings. *Id.* at 137, 105 S.Ct. at 3087; 722 F.2d 482 at 486–87 (9th Cir.1983). Also, the beneficiary sought punitive damages. 473 U.S. at 138, 105 S.Ct. at 3088.

The issue in *Russell*, as defined by the majority opinion, was whether, under ERISA, "a fiduciary of an employee benefit plan may be held personally liable to a plan participant or beneficiary for extracontractual compensatory or punitive damages caused by improper or untimely processing of benefit claims." *Id.* at 136, 105 S.Ct. at 3087. The Court noted that "[b]ecause respondent relies entirely on § 409(a), and expressly disclaims reliance on § 502(a)(3), we have no occasion to consider whether any other provision of ERISA authorizes recovery of extracontractual damages." *Id.* at 139 n. 5, 105 S.Ct. at 3088 n. 5.

As the Court pointed out, the beneficiary had received all of the payments of disability benefits to which she was contractually entitled. Thus, the compensatory and punitive damages sought by the beneficiary were extracontractual. *Id.* at 138, 105 S.Ct. at 3088.

The Supreme Court found that section 409(a) did not provide express authority for an award of extracontractual damages to a beneficiary. *Id.* at 144, 105 S.Ct. at 3091. This conclusion was reached after examining the language of sections 409(a) and 502(a)(2), which indicate that Congress intended actions brought pursuant to these sections to be on behalf of the plan as a whole rather than an individual beneficiary. *Id.* at 142 n. 9, 105 S.Ct. at 3090 n. 9.

In addition, the Court concluded that the beneficiary had no implied cause of action under the principles of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). 473 U.S. at 145–48, 105 S.Ct. at 3091–93. "[I]n § 409(a) Congress did not provide, and did not intend the judiciary to imply, a

---

**1.** Section 502(a)(2) as codified in 29 U.S.C. § 1132(a)(2), provides: (a) Persons empowered to bring a civil action. A civil action may be brought-* * * (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title....

**2.** Section 409(a) as codified in 29 U.S.C. § 1109(a), provides: (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

cause of action for extracontractual damages caused by improper or untimely processing of benefit claims." *Id.* at 148, 105 S.Ct. at 3093. The Court reached this conclusion after examining the "six carefully integrated civil enforcement provisions found in § 502(a)," which "provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092 (italics in original). Congress intended section 502(a) to provide the exclusive "panoply of remedial devices" for actions against a plan fiduciary by a participant or beneficiary to recover damages or other personal relief. *Id.*

Justice Brennan concurred with a separate opinion and was joined by Justices White, Marshall and Blackmun. According to Justice Brennan, *Russell* presented "a single, narrow question: whether the § 409 'appropriate equitable relief' referred to in § 502(a)(2) includes individual recovery by a participant or beneficiary of extracontractual damages for breach of fiduciary duty." *Id.* at 149, 105 S.Ct. at 3094. Although the majority opinion did not resolve whether and to what extent extracontractual damages are available under section 502(a)(3), Justice Brennan outlined the proper approach for courts to take in construing ERISA's provisions, including sections 404(a) and 502(a)(3). *Id.* at 150–51, 105 S.Ct. at 3094–95.

Justice Brennan stated that section 502(a)(3) provides for an award of "appropriate equitable relief" for acts or practices that violate any provision of ERISA or the terms of a retirement plan. *Id.* at 153, 105 S.Ct. at 3096. Therefore, a beneficiary may obtain "appropriate equitable relief" whenever an administrator breaches the fiduciary duties set forth in section 404(a). *Id.* at 154, 105 S.Ct. at 3096. Finding that "Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA," he would apply in ERISA cases "black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Id.* at 152–53, 105 S.Ct. at 3095–96 (footnote omitted). Under the law of trusts, "a beneficiary [is] enti-

tled to a remedy 'which will put him in the position in which he would have been if the trustee had not committed the breach of trust.'" *Id.* at 157 n. 16, 105 S.Ct. at 3098 n. 16 (quoting Restatement (Second) of Trusts § 205, and Comment *a* (1959)). Therefore, construing sections 404(a) and 502(a)(3) together, a beneficiary may obtain "appropriate equitable relief" for breach of fiduciary duties, and such equitable remedies "include provision of monetary damages." *Id.* at 154 n. 10, 105 S.Ct. at 3096 n. 10.

### B.

Although the claim in *Russell* was brought pursuant to section 502(a)(2), courts of appeal that have considered the question have applied *Russell* in cases involving claims brought pursuant to section 502(a)(3). This court and other courts of appeal have held that punitive damages are not permitted under claims brought pursuant to section 502(a)(3). See, e.g., *Drinkwater,* supra; *Varhola v. Doe,* 820 F.2d 809 (6th Cir.1987); *Powell v. Chesapeake & Potomac Tele. Co.,* 780 F.2d 419 (4th Cir. 1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Sommers Drug Stores v. Corrigan Enterprises,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

Also, several courts of appeal have held that "extracontractual" compensatory damages are not recoverable under section 502(a)(3). See *Drinkwater,* supra; *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302 (9th Cir. 1986); *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986); *United Steelworkers of America v. Connors Steel Co.,* 855 F.2d 1499 (11th Cir.1988), *cert. denied sub nom. H.K. Porter Co. v. United Steelworkers of America,* — U.S. ——, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). Without identifying any particular section of ERISA, this court stated in dicta that "[t]here can be no extracontractual recovery in the context of an ERISA plan." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th

Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

In many cases in which the recovery of "extracontractual" compensatory damages under section 502(a)(3) has been denied, the plaintiffs sought compensatory damages for emotional distress. See *Powell,* supra; *Sokol,* supra; *United Steelworkers of America,* supra. Also, the recovery of "extracontractual" compensatory damages has been denied based on the belief that "other appropriate equitable relief" under § 502(a)(3) means only declaratory or injunctive relief and does not include damages. *Drinkwater,* 846 F.2d at 824; *Sokol,* 803 F.2d at 538.

### C.

In the present case, the district court concluded that the damages sought by Dr. Warren are not recoverable under section 502(a)(3), apparently on the basis that *Russell* precludes such damages. To the contrary, we find that the damages sought by Dr. Warren are recoverable.

Dr. Warren's claim differs from that of the plaintiff in *Russell* in two respects: (1) the nature of the alleged injuries and the relief sought, and (2) the statutory bases for the claim.

With regard to the nature of the claims, Dr. Warren claimed that the bank violated a contractual duty under the retirement plans to distribute his plan assets in accordance with his instructions. To support this claim, he filed a copy of a summary plan description for each plan. The summary plan descriptions provide specifically in Option 4 that a participant can elect to receive his or her retirement benefits in "[a] single lump-sum payment." When a participant elects this option, the plan imposes a contractual duty on the fiduciary to honor it. A single lump-sum payment necessarily occurs during a single calendar year, and if paid to a qualified IRA, constitutes a rollover entitled to deferment for income tax purposes. The fiduciary has a contractual duty to abide by the participant's election of the type of distribution he desires.

Dr. Warren asserts that the bank violated its contractual duty by failing to carry out his instructions to distribute the assets of the plans. Moreover, by acting negligently or in its own interest, the bank violated the prudent man standard of care under section 404(a).[3]

Also, the injuries alleged by Dr. Warren—tax and tax interest liability and loss of investment earnings—are direct injuries resulting from the bank's failure to follow his instructions.

In contrast, the plaintiff in *Russell* made no claim that the fiduciary of her disability plan violated a contractual duty. In fact, the plaintiff had received all the benefits to which she was contractually entitled. Also, rather than seeking damages for direct injuries, the plaintiff sought punitive damages and damages for the consequential injuries of emotional distress and the necessity of cashing out her husband's retirement savings.

With respect to the statutory bases for the claims, Dr. Warren brought his action pursuant to section 502(a)(3) claiming a cause of action under section 404(a)(1). In *Russell,* the action was brought pursuant

---

**3.** Section 404(a)(1) as codified in 29 U.S.C. § 1104(a)(1) provides:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

to section 502(a)(2) claiming a cause of action under section 409(a).

While *Russell* is not dispositive, we are bound by the Supreme Court's statement that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." 473 U.S. at 146, 105 S.Ct. at 3092 (italics in original). ERISA's civil enforcement remedies were intended to be exclusive. *Id.; Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). However, since the majority opinion in *Russell* did not deal with section 502(a)(3), questions arising under that section remain open. 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5.

## IV.

### A.

■ The question before this court is whether section 502(a)(3)—part of a "carefully integrated" enforcement scheme—permits the recovery of compensatory damages to redress a direct injury to a participant by a fiduciary that allegedly violated its contractual duty under the terms of the retirement plans and under the provisions of ERISA. In deciding this question, we look again at the language of section 502(a)(3). Section 502(a)(3) provides in pertinent part:

A civil action may be brought—

\*　　\*　　\*　　\*　　\*　　\*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations.

Pursuant to section 502(a)(3)(A), a participant may bring an action to enjoin any act that violates ERISA or the terms of a retirement plan. Thus, Congress expressly provided injunctive relief in (A). In addition, a participant may bring an action under section 502(a)(3)(B)(i) to obtain "other appropriate equitable relief" to redress violations of ERISA or the terms of a retirement plan. Under (B)(i), Congress appears to have expressly provided for equitable remedies other than injunctive relief.

In determining whether the damages sought by Dr. Warren constitute "other appropriate equitable relief," we find Justice Brennan's concurrence in *Russell*, discussed earlier in this opinion, to be instructive.

Justice Brennan stated that a beneficiary may seek "other appropriate equitable relief" when an administrator breaches the fiduciary duties set forth in section 404(a). See *Russell*, 473 U.S. at 154, 105 S.Ct. at 3096. Given that Congress intended to incorporate the fiduciary standards of trust law into ERISA, it is proper to apply "black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Id.* at 152–53, 105 S.Ct. at 3095–96 (footnote omitted). Under the law of trusts, "a beneficiary is entitled to a remedy 'which will put him in the position in which he would have been if the trustee had not committed the breach of trust.'" See *Id.* at 157 n. 16, 105 S.Ct. at 3098 n. 16 (quoting Restatement (Second) of Trusts § 205, and Comment *a* (1959)). And, "other appropriate equitable relief" under section 502(a)(3), for breach of fiduciary duties set forth in section 404(a), includes the provision of monetary damages. *Id.* at 154 n. 10, 105 S.Ct. at 3096 n. 10.

Interestingly, the district court relied upon some of the same authorities as Justice Brennan to reach the opposite conclusion. For example, the district court relied upon the Restatement (Second) of Trusts § 207 and another treatise in finding that a trustee's liability for breach of trust is limited to lost interest. In addition, the court referred to the description of two cases in A. Scott & W. Fratcher, *The Law of Trusts* § 205 n. 2 (4th ed. 1988). In those cases the trustees caused a "bunching" of several years' income in a single year, resulting in an increase in the beneficiaries' income tax. Minnesota and Pennsylvania courts held in both instances that the trustees were not liable for such consequential damages.

We believe Justice Brennan's conclusion is correct that under the law of trusts, a beneficiary is entitled to a remedy that will put him in the position he would have been in if the fiduciary had not committed a breach of trust, and that such a remedy includes monetary damages. See *Russell*, 473 U.S. at 154 n. 10, 157 n. 16, 105 S.Ct. at 3096 n. 10, 3098 n. 16. Our position is supported by decisions of other courts of appeals finding that equitable relief includes monetary damages where required to afford complete relief. It is the historic purpose of equity to secure complete justice, and courts may adjust their remedies so as to grant the necessary relief. *Walters v. Marathon Oil Co.*, 642 F.2d 1098, 1100 (7th Cir.1981); *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir.1987). Equitable relief may include monetary damages if necessary to do complete justice. *Walters*, 642 F.2d at 1100; *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1229 (7th Cir.1982).

The term "other appropriate equitable relief" implies a broad range of remedies. We adhere to the principle "endorsed repeatedly ... by the federal judiciary," that "when Congress uses broad generalized language in a remedial statute, and that language is not contravened by authoritative legislative history, a court should interpret the provision generously so as to effectuate the important congressional goals." *Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 428 (1st Cir.1985) (footnote omitted). One of the important goals of ERISA is to make certain that participants and beneficiaries not be deprived of the full value of their plan benefits by a fiduciary's breach of a contractual duty.

### B.

■ Dr. Warren alleged that SNB breached a duty imposed upon it by the plans, and that ERISA provides for a complete remedy by stating that "[a] civil action may be brought ... (3) by a participant ... (B) to obtain other appropriate equitable relief (i) to redress such violations." He claimed that the bank's failure to make a single lump-sum distribution greatly diminished the value of the funds distributed by making them subject to immediate income taxes that would not have been due if the bank had distributed them in such a way as to effect a rollover.

Dr. Warren brought this action to redress a violation of the terms of the plans—the alleged failure of the bank to perform a contractual duty. The act was completed. The bank allegedly had distributed Dr. Warren's plan assets contrary to his instructions, directly resulting in the loss of one of the most significant benefits available under ERISA. An injunction or declaration of rights would have provided no redress. The only redress available was damages to compensate him for the injury caused by the bank's breach of duty.

In light of the plain language of the statute, the common law of trusts, and the role of courts in equity, we find that the damages sought by Dr. Warren are recoverable as "other appropriate equitable relief" under section 502(a)(3)(B)(i).

This decision does not necessarily put us in conflict with the holdings of other courts of appeal that have disallowed extracontractual damages under section 502(a)(3). In some of the cases we have examined the plaintiffs sought punitive damages, which Dr. Warren is not claiming. In some instances the plaintiffs sought compensatory damages for such clearly consequential injuries as emotional distress. This case is different. Dr. Warren claims that, although the bank distributed all the plan assets to which he was entitled, the bank distributed them contrary to his instructions, directly causing a severe diminution in their value. Thus, he charges that by its negligence or for an impermissible purpose, it acted in such a way as to deprive him of a benefit to which he was entitled under the plans, thereby violating provisions of the plans and of ERISA. The "carefully integrated civil enforcement provisions" of section 502(a)(3) should be held to provide an avenue of redress. Nothing in *Russell* holds to the contrary.

## V.

We also conclude that the district court erred in holding that the amended complaint failed to state sufficient facts to withstand a motion to dismiss. A district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). Considering the allegations of the amended complaint as true and viewing them in a light most favorable to the plaintiff, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202 (1986), we cannot say that it appears beyond doubt that Dr. Warren can prove no set of facts that would entitle him to recover. The amended complaint gives clear notice of the nature of Dr. Warren's claim and its basis, and it contains factual allegations that are sufficient to withstand a Rule 12(b)(6) motion.

### CONCLUSION

The district court erred in dismissing the case. Accordingly, the judgment is reversed and the case is remanded for further proceedings. We make no ruling and express no opinion on the merits of Dr. Warren's claim. The district court will reach the merits in due course after the pleadings and discovery are complete.

DAVID A. NELSON, Circuit Judge, concurring.

In its brief on appeal, the defendant bank says that it "disputes Plaintiffs' contention that the transfer of the assets in two different calendar years resulted in ... the loss of any income tax deferral status." This issue has not been briefed, and the rules on tax-free rollovers are complex enough to suggest that it would be unwise for us to try to make sense of them on our own. I assume that on remand the parties will have an opportunity to explain their respective positions on the actual tax consequences of any multi-year distributions that may have occurred. (Each of Dr. Warren's retirement plans stands alone, presumably, and one cannot be certain, from the amended complaint, that assets from any individual plan were transferred in more than one year.)

If the plaintiffs succeed in showing that tax-free rollovers can only be accomplished in a single calendar year, and if it turns out that multi-year transfers were made from individual plans, I take it that a number of essentially factual issues are likely to be presented. The plaintiffs allege, for example, that the bank had a fiduciary duty to administer the retirement plans "competently;" do reasonably careful trustees in fact make it their business to minimize the exposure of plan beneficiaries to taxation? When he decided to withdraw from the plans, did Dr. Warren in fact notify the bank of an election to take "a single lump-sum payment" from each plan? Did the instruments creating the trusts, or any other plan documents to which the bank was a party, specify that all income earned to the date of transfer would have to be paid simultaneously with the payment of principal? Did the bank really delay the transfer of portions of the trust assets in order, as the amended complaint alleges, "to continue generating fees for its management," or was there a more benign explanation? And if there was a breach of duty that made it necessary for the Warrens to pay $87,205 in taxes sooner than they would have otherwise have had to, and if it did in fact cause an acceleration of the time when they would lose the benefit of a tax-deferred compounding of the income on $168,094, what was the present value of the advantages which they lost? Without knowing the answers to these and similar questions, we cannot say whether all or any part of the damages sought by Dr. Warren are recoverable.

I concur in the judgment that the bank failed to show that it was entitled to a dismissal of the case for failure of the amended complaint to state a claim upon which relief could be granted. I have written separately merely to suggest that the questions remaining to be decided may

prove to have a much broader sweep than the narrow question that is before us now.

WELLFORD, Circuit Judge, dissenting.

The district court in this interesting case held for the defendant Bank, and, in any event, would limit damages to recovery of the amount due the Warrens under the plan plus interest.[1] The court found that the Warrens did "not allege that they instructed SNB to complete the transfer of the funds prior to December 31, 1984. Nor do they allege that SNB, by virtue of its 'familiar[ity] with such matters,' should have known to do so." The district court held that "extracontractual damages are not recoverable in actions, like the present one, brought pursuant to § 1132(a)(3)." Quoting *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), the court concluded that "compensatory and punitive damages ... are extracontractual," and that "other appropriate equitable relief," as used in § 1132(a)(3)(B) of ERISA, "should be interpreted to mean what it says—declaratory or injunctive relief, not compensatory and punitive damages." *See also* Note, 71 Cornell L.Rev. 1014 (1986).

In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 3090 n. 9, 87 L.Ed.2d 96 (1985), the Supreme Court referred to § 502(a)(2) as "the enforcement provision for § 409," that authorizes suits by four classes of persons including "beneficiaries" such as Dr. Warren. The Court emphasized that "the common interest shared by all four classes is the *financial integrity of the plan.*" *Id.* (emphasis added). The Court added that Congress intended the enforcement or remedies part of ERISA (§ 502) to "protect the *entire plan*, rather than ... the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. at 3090 (emphasis added). Discussing the plan administrators' delay in processing

Russell's disputed claim, the Court found that, "[T]here really is nothing at all in the statutory text to support the conclusion that such a delay [by the plan administrators] gives rise to a private right of action for compensatory or punitive relief." *Id.* at 144, 105 S.Ct. at 3091.[2] The court concluded:

Thus, the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extracontractual damages caused by improper or *untimely processing* of benefit claims.

473 U.S. at 148, 105 S.Ct. at 3093 (emphasis added).

The majority seizes on language in Justice Brennan's concurrence that characterizes some of the language cited above as "dicta ... sweeping more broadly than the narrow ground of resolution." *Id.* at 150, 105 S.Ct. at 3094. I would take the opinion of the majority in *Russell*, even if dicta, as setting a proper guide to follow rather than Justice Brennan's separate opinion which speaks for a minority of the Court.

We have followed the language of the majority in *Russell* in holding that § 502(a)(3) of ERISA does not authorize "extracontractual" damages in the form of punitive awards. *See Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir.1987). Four courts of appeals and several district courts have read the majority opinion in *Russell* to prohibit the recovery of "extracontractual" compensatory damages under § 502(a)(3). *See, e.g., Amos v. Blue Cross–Blue Shield*, 868 F.2d 430, 431 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *Drinkwater*, 846 F.2d at 825; *Sokol v. Bernstein*, 803 F.2d 532, 534 (9th Cir.1986) ("[D]amages for emotional distress are unavailable under § 502(a)(3) as well as under § 409."); *Hancock v. Montgomery Ward Long Term Disability*

---

1. The district court cites 3A A. Scott & W. Fratcher, *The Law of Trusts* § 205 n. 2 (4th ed.1988), for the latter proposition.

2. Justice Stevens reiterated that, "the six carefully integrated civil enforcement provisions found

in § 502(a) of the statute ... provide strong evidence that Congress did *not* intend to authorize other remedies." 473 U.S. at 146, 105 S.Ct. at 3092 (emphasis in original).

*Trust,* 787 F.2d 1302, 1307 (9th Cir.1986) ("[L]anguage of section 1132(a)(3) providing for 'equitable relief' ... supports this view in that extracontractual damages against a fiduciary are not an available form of 'equitable relief.'"); *Powell v. Chesapeake and Potomac Tel. Co.,* 780 F.2d 419, 424 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) ("[T]he provision for 'other appropriate equitable relief,' whatever it embraces, cannot be held to authorize extracontractual or punitive damages for the breach of a plan administrator's fiduciary duties under ERISA.").

Recently, we stated, in agreement with these other circuit courts, that "[t]here can be no extracontractual recovery in the context of an ERISA plan." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). The majority seeks to characterize this as dicta, but plaintiff in *Davis* asserted reversible error in the district court's refusal to allow her "to litigate her claims for extracontractual compensatory and punitive damages." *Id.* at 695. The majority's expression that the contrary holding in *Davis* constitutes dicta is simply mistaken.

Contrary to the majority's holding in this case, the panel in *International Union UAW Local 91 v. Park–Ohio Indus.,* 876 F.2d 894 (6th Cir.1989) (unpublished opinion), applied the same rationale adopted in *Davis* in holding that extracontractual damages are not recoverable under § 502(a)(3). The panel stated:

> Relying upon the Ninth Circuit's opinion in *Sokol,* the district court found *Russell's* rationale equally applicable in the present case, and went on to reason that the legislative history of ERISA would compel a finding that extracontractual damages are unavailable, as well. The

union contends, however, that this is an issue that *Russell* expressly left open, and that the legislative history of ERISA demonstrates that the principles of the law of trust [sic] should be incorporated, including alternative remedies for a breach of trust that would meet the objective of "making a beneficiary whole."

> We are unpersuaded by the union's vague reference to trust law principles. Indeed, ERISA's incorporation of the law of trusts argues against allowing extracontractual compensatory damages in actions for breach of fiduciary duties under §§ 1132(a)(1)(B) or 1132(a)(3) of ERISA. As *Varhola* indicates, extracontractual damages are not ordinarily available in breach of trust cases, whether or not in some attenuated sense such damages might "make the plaintiff whole." Further, we find *Russell* controlling and join the other circuits which have held that the language and structure, as well as the legislative history, of § 1132 prohibit the allowance of such damages.

> Accordingly, we affirm the district court's holding that extracontractual compensatory damages are not available in actions under §§ 1132(a)(1)(B) or 1132(a)(3) of ERISA.

*Id.*

With all due respect, neither Judge Lively nor Judge Nelson have cited a single ERISA case holding that extracontractual compensatory damages are recoverable under § 502(a)(3).[3] Moreover, I do not find Justice Brennan's separate opinion in *Russell* to be controlling or "instructive" on the issue before us. I agree with the conclusions of this court and each of the other circuits which have interpreted the pertinent ERISA language at issue in this case and emphasize that we are compelled to follow the prior precedent of this court.

The damages sought by the Warrens unfortunately, and I am not unsympathetic to

---

**3.** *Walters v. Marathon Oil Co.,* 642 F.2d 1098 (7th Cir.1981), *United States v. Martinson,* 809 F.2d 1364 (9th Cir.1987), *Goldberg v. Medtronic, Inc.,* 686 F.2d 1219 (7th Cir.1982), and *Cia. Petrolera Caribe, Inc. v. Argo Caribbean, Inc.,* 754 F.2d 404 (1st Cir.1985), do not pertain to statutory provisions similar to those at issue in this case. The First and Ninth Circuits, moreover, have specifically held in ERISA construction cases, contrary to earlier "equity" language of *Cia. Petrolera* and *Martinson,* that ERISA does *not* provide extracontractual consequential type damages. *See Drinkwater, supra,* and *Hancock, supra.*

their plight from a tax standpoint, are not recoverable as extracontractual claims or as "other appropriate equitable relief" under § 502(a)(3)(B)(i) or any other section of ERISA. Our court has already said as much in *Davis* (and to the same effect in *Varhola*), and all other circuits which have considered this question have so interpreted ERISA. Because I find no allegation in the Warrens' amended complaint that SNB was under a specific duty or specific instruction to complete the transfer of the funds by December 31, 1984, I can see no basis for the extensive efforts of my brethren to create a cause of action for the Warrens on general equitable principles apart from the language of ERISA.

I would affirm the decision of the district court. I accordingly DISSENT.