Rita **GREEN, et al., Plaintiffs,**

v.

**AIM EXECUTIVE, INC.,
et al., Defendants.**

**No. 3:90CV7670.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 28, 1990.

Barry W. Fissel, Eastman & Smith, Toledo, OH, for Rita Green and Daryl Dent.

Stephen A. Rothschild, Shumaker, Loop & Kendrick, Toledo, OH, for AIM Executive Inc., Jeffrey L. Deperro, and Scott R. Deperro.

John J. Siciliano, Fuller & Henry, Toledo, OH, David C. Weiss, Duane, Morris & Heckscher, Wilmington, DE, for Delaware Charter Guarantee and Trust Co.

Irwin S. Haiman, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, for Prudential Securities Inc.

James Lee Rogers, Barry W. Fissel, Mark C. Abramson, Eastman & Smith, Toledo, OH, for Martha Dent.

### MEMORANDUM AND ORDER

JOHN W. POTTER, Senior District Judge.

This action is before the Court on defendants' motion for partial summary judgment, plaintiffs' opposition and motion for partial summary judgment, defendants' reply and opposition to plaintiffs' motion for partial summary judgment, plaintiffs' first and second supplemental authority, and defendants' response. This is a class action brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA), by employees to obtain benefits under an employee profit sharing retirement plan maintained by their employer, AIM Executive, Inc. (AIM). The class consists of all present and former non-shareholder employees of defendant AIM who, during their employment by AIM, fulfilled the eligibility and participation requirements of the AIM Executive, Inc. Profit Sharing Plan in one or more plan years between 1983 and 1989.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

Ralph Shrader, Inc. v. Diamond International Corp., 833 F.2d 1210, 1213 (6th Cir. 1987).

Matsushita demands only that the non-moving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated in that decision. If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted.

Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 468–469, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (footnote omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. Id. A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 324–325, 106

S.Ct. at 2554. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." ... Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The focus of the parties' motions is on the remedies plaintiffs may seek under ERISA. Plaintiffs allege, inter alia, that AIM failed to make proper employer contributions to the profit sharing plan. Consequently, on termination of the plan, plaintiffs allege that they did not receive all of the benefits to which they were entitled. Plaintiffs seek to recover, not only the unpaid contributions owed under the plan, but also taxes that will allegedly be owed by the individual plan participants together with lost tax-deferred growth income for each participant's interest in the plan until each participant reaches age 70.

■ The Court will first address defendants' motion for partial summary judgment. Defendants move for a declaratory judgment that, under ERISA, plaintiffs may not recover as damages the value of lost tax-deferred growth income and anticipated tax losses. The civil enforcement remedies codified at 29 U.S.C. § 1132 were intended to be the exclusive remedies in an ERISA action. *Warren v. Society Nat'l Bank,* 905 F.2d 975, 981 (6th Cir.1990). Section 1132(a) provides in relevant part:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> \* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

■ First, Defendants argue that plaintiffs cannot recover as damages the anticipated tax losses and lost tax-deferred growth income for claims arising under § 1132(a)(3)(B). While plaintiffs rely heavily on *Warren v. Society Nat'l Bank,* 905 F.2d 975 (6th Cir.1990) in arguing that such damages are recoverable under § 1132(a)(3)(B), defendants contend that the Sixth Circuit's reasoning in that opinion was rejected in *Mertens v. Hewitt Assoc.,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).[1]

In *Warren,* plaintiff brought suit pursuant to § 1132(a)(3)(B) against an ERISA fiduciary for breach of a contractual duty to make a single lump sum distribution of proceeds from his retirement plan. As a result, the plaintiff was unable to roll over the proceeds into a tax deferred IRA account. The injuries alleged by the plaintiff included income tax and tax interest liability, and loss of investment earnings that were the direct result of the fiduciary's breach. *Warren,* 905 F.2d at 980.

In finding that the damages sought by plaintiff constituted "other equitable relief," the Court found Justice Brennan's concurrence in *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87

---

**1.** In plaintiffs' opposition, they concede that "[i]f *Mertens* precludes recovery of direct compensatory damages under [§ 1132(a)(3)], even under the distinct circumstances of *Warren,* then the class would have to look elsewhere in ERISA for relief." Plaintiffs' Opp. at 2.

L.Ed.2d 96 (1985), to be instructive and stated:[2]

> We believe Justice Brennan's conclusion is correct that under the law of trusts, a beneficiary is entitled to a remedy that will put him in the position he would have been in if the fiduciary had not committed a breach of trust, and that such a remedy includes monetary damages.... It is the historic purpose of equity to secure complete justice, and courts may adjust their remedies so as to grant the necessary relief. Equitable relief may include monetary damages if necessary to do complete justice.

*Id.* at 982 (internal citations omitted). The Court then concluded that

> In light of the plain language of the statute, the common law of trusts, and the role of courts in equity, we find that the damages sought by [plaintiff] are recoverable as "other appropriate equitable relief" under section [1132(a)(3)(B)(I) ].

*Id.* The Court found its holding in *Warren* distinguishable from the holdings of other courts of appeal that have disallowed extracontractual damages under § 1132(a)(3) in that plaintiffs in other cases sought punitive damages or compensatory damages for such clearly consequential injuries as emotional distress. By contrast, in *Warren*, the plaintiff was deprived of a benefit to which he was entitled under the terms of the plan (i.e. a single lump sum distribution) which directly resulted in plaintiff being subject to tax liability. The focus in *Warren*, then, was on the role of courts in equity together with the direct nature of the injury resulting from a contractual breach of fiduciary duty.

However, in its 1993 decision in *Mertens*, the Supreme Court specifically addressed the issue of "appropriate equitable relief" under § 1132(a)(3) and, in effect, rejected the reasoning employed by the Sixth Circuit in *Warren*. The Court noted that, although petitioners maintained that the object of their suit was "appropriate equitable relief," they were not seeking "a remedy traditionally viewed as 'equitable,' such as injunction or restitution." *Mertens,* —— U.S. at ——, 113 S.Ct. at 2068. Petitioners in *Mertens* argued that reading "equitable relief" to preclude awards for compensatory damages under § 1132(a)(3) fails to acknowledge ERISA's roots in the common law of trusts and that such relief for breach of duty has traditionally been obtained in courts of equity and, therefore is, by definition, equitable relief. *Id.* at ——, 113 S.Ct. at 2068. However, the Supreme Court rejected this argument stating that

> "Equitable relief" can also refer to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).... Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under [§ 1132(a)(3) ] to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all.* We will not read the statute to render the modifier superfluous.

*Id.* at ——, 113 S.Ct. at 2069 (internal citations omitted). Thus, the Sixth Circuit's reli-

---

**2.** In *Russell*, the plaintiff sought compensatory and punitive damages relying entirely on section 1109(a). *Russell,* 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5. The Court expressly reserved the question whether extracontractual damages might be one form of "other appropriate equitable relief" under section 1132(a)(3). *Id.* However, in his concurring opinion, Justice Brennan discussed what he believed to be the proper approach in determining what damages are appropriate under section 1132(a)(3). He stated that

> courts should begin by ascertaining the extent to which trust and pension law as developed by state and federal courts provide for recovery by the beneficiary above and beyond the bene-

fits that have been withheld; this is the logical first step, given that Congress intended to incorporate trust law into ERISA's equitable remedies. If a requested form of additional relief is available under state trust law, courts should next consider whether allowance of such relief would significantly conflict with some other aspect of the ERISA scheme.

*Id.* at 157, 105 S.Ct. at 3098. However, he did not believe that a given form of monetary relief should be withheld "simply because a beneficiary's remedies under ERISA are denominated 'equitable.' " *Id.* at 154 n. 10, 105 S.Ct. at 3096 n. 10. As set forth later in this opinion, the Supreme Court rejected similar reasoning in its *Mertens* decision.

ance on the common law of trusts and the role of courts in equity in finding compensatory damages recoverable in *Warren* is no longer valid. *See Richards v. General Motors Corp.,* 850 F.Supp. 1325, 1335 (E.D.Mich. 1994) ("To the extent that other courts (including the Sixth Circuit in *Warren v. Society Nat'l Bank* [citation omitted]) have allowed extracontractual compensatory damages under [1132(a)(3)], they are now overruled by the Supreme Court's holding in *Mertens....*").

The Sixth Circuit has acknowledged that, "in light of *Mertens,*" the question is whether the relief requested is an equitable or legal remedy. *Schwartz v. Gregori,* 45 F.3d 1017, 1022 (6th Cir.1995). In *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), the Court discussed generally the attributes which justify the characterization of a money award as equitable in determining whether or not a party is entitled to a jury trial. The Court stated that damages can be characterized as equitable where they are restitutionary or where they are incidental to or intertwined with injunctive relief. However, as indicated earlier, *Mertens* limited the definition of "equitable" relief in an ERISA context to preclude awards for damages simply because an equity court has the power (i.e. incident to its injunctive power) to award such damages.

The Sixth Circuit recognized this limitation in *Schwartz.* In that case, plaintiff brought an action under § 510 of ERISA, 29 U.S.C. § 1140, alleging retaliatory discharge for filing suit to enforce her rights under an employer's pension plan. The relief sought by plaintiff included both back and front pay. Section 1132(a)(3) governs the relief available for claims brought pursuant to § 1140. Although the parties drew no distinction between back and front pay, the Court assessed each remedy separately. *Id.* In finding the requested back pay to be restitutionary relief, the court stated:

> Under *Mertens,* we cannot characterize relief as equitable solely because a court sitting in equity has the power to award it.... Thus, if *Terry* had characterized the back pay approved in [*Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)] as equitable simply because it was within the power of a court sitting in equity to award, *Mertens* would preclude a determination that back pay is equitable in nature and available under [§ 1132(a)(3)]. However, *Terry* characterized the back pay in *Mitchell* as restitutionary, a remedy expressly recognized by *Mertens* as equitable.

*Schwartz,* 45 F.3d at 1022 n. 4. The court also found that front pay was an equitable remedy where the preferred remedy of reinstatement is not appropriate or feasible relying on the court's "historical assessment of the nature of front pay". *Id.* at 1023.

In the case sub judice, the damages at issue include anticipated tax losses and lost tax-deferred growth income. The tax and growth benefits claimed by plaintiffs are not benefits required by the terms of the plan. As plaintiffs are seeking damages for benefits not required by the plan, the Court is unable to characterize such benefits as restitutionary. Rather, these damages are traditional compensatory damages which are not recoverable under § 1132(a)(3). The Court notes that, while the broader remedial view espoused in Justice Brennan's concurrence in *Russell* and followed in *Warren* might better serve the ends of justice in the case at bar, such a view is inconsistent with the reasoning of *Mertens. See Harsch v. Eisenberg,* 956 F.2d 651, 659 (7th Cir.1992).

*Schwartz* and *Howe v. Varity Corp.,* 36 F.3d 746 (8th Cir.1994), cited by plaintiffs, do not persuade the Court otherwise. Plaintiffs argue that, for reasons similar to those stated in *Schwartz,* the lost tax-deferred growth income being sought by plaintiffs should be considered restitutionary in nature. Specifically, plaintiffs cite language found in the court's discussion of the restitutionary nature of back pay that "a court may restore the plaintiff to the position he formerly occupied 'either by the return of something which he formerly had or by receipt of its equivalent in money.'" *See Schwartz,* 45 F.3d at 1022. However, the Court does not, in light of *Mertens,* read this language to include such consequential damages as sought by plaintiffs in the case sub judice. In finding front

**348**

pay an equitable remedy, the Sixth Circuit relied on its historical assessment of the nature of front pay. No such historical assessment applies to the damages at issue in the instant action. Rather, the Sixth Circuit, in *Warren,* characterized the same relief as compensatory in nature. *See Warren,* 905 F.2d at 981; *see also Armstrong v. Jefferson Smurfit Corp.,* 30 F.3d 11, 13 (1st Cir.1994) (tax liabilities incurred after lump sum payments from plan are compensatory legal damages).

Likewise, *Howe* does not support plaintiffs' position. In *Howe,* the district court entered a judgment for compensatory damages. The Eighth Circuit held that "[s]uch a judgment is legal relief, not equitable, and is not available under Section [1132(a)(3) ]." The court then found that plaintiffs were entitled to receive only an award in the nature of restitution to compensate them for plan benefits of which they had been deprived. *Howe,* 36 F.3d at 756. Recovery of anticipated tax losses and lost tax-deferred growth income as are sought in the case sub judice are not provided as benefits under the terms of the plan. Such relief is not restitutionary but, rather, consists of traditional compensatory legal damages which are not recoverable under § 1132(a)(3).

■ Next, defendants contend that plaintiffs cannot recover as damages the tax losses and lost growth income to age 70 for claims arising under § 1132(a)(2). As set forth above, this section allows a plan participant to seek relief under § 1109. Section 1109 of Title 29 provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or reme-

dial relief as the court may deem appropriate, including removal of such fiduciary.

■ The Sixth Circuit has held that § 1109 authorizes relief only to the plan itself, not to individuals. *See Bryant v. International Fruit Prod. Co., Inc.,* 886 F.2d 132, 135 (6th Cir.1989). In *Bryant,* the court stated that "ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan." *Id.* Therefore, to recover the damages at issue in this motion, plaintiffs must be able to demonstrate a loss to the plan. *See also Roth v. Sawyer–Cleator Lumber Co.,* 16 F.3d 915 (8th Cir.1994) ("if individual plan participants suffer losses, but the plan does not, the [fiduciary] is not personally liable for damages under [§ 1109]").

Plaintiffs argue that the damages at issue are a loss to the plan in that the plan is not able to distribute to the beneficiaries payments that are eligible for preferential tax treatment; thus, the value of the benefits *to the plan participants* is diminished. This does not, however, demonstrate a loss to the plan. As defendants correctly assert, the tax burdens are personal losses which belong to the individual participants and not the plan. *See Oscar A. Samos, M.D., Inc. v. Dean Witter Reynolds, Inc.,* 772 F.Supp. 715, 717–718 (D.R.I.1991) (tax penalties and loss income are personal losses). Consequently, the plan does not suffer a loss for taxes that might have to be paid by the beneficiaries.

Plaintiffs also seek as damages lost growth income until age 70 of each plan participant. However, the plan does not require defendants to maintain the plan for any specified time period. Rather, it expressly provides that "[t]he Employer may terminate the Plan by appropriate corporate action." *See* Plan at Article XV. Once the plan was terminated, it could not possibly suffer damages for lost growth income.[3] Thus, the Court concludes that the damages at issue are not damages for losses to the plan. Consequently, plaintiffs cannot recover damages for an-

3. Defendants concede that if they are found liable for breach of fiduciary duties, they could be liable to the plan for the profits they might have earned on assets that should have been a part of

the plan during the years when the plan existed. The parties disagree on the method of calculating those profits; however, that issue is not before the Court at this time.

ticipated tax losses and lost growth income under §§ 1132(a)(2) and 1109.

■ Finally, defendants argue that damages for tax losses and lost growth income are not recoverable under § 1132(a)(1)(B). As set forth above, this section permits plan participants to recover specific benefits due under the terms of a plan. The damages at issue in the instant motion do not represent benefits due under the terms of the plan, and plaintiffs do not argue otherwise. Therefore, the Court must determine whether extracontractual damages are recoverable under § 1132(a)(1)(B).

> In *Russell,* the Supreme Court stated that the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan— [§ 1132(a)(1)(B) ], ... says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Russell,* 473 U.S. at 144, 105 S.Ct. at 3091. The Court also stated that "[t]he six carefully integrated civil enforcement provisions found in [§ 1132] ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092. Since *Russell,* courts have concluded that extracontractual damages are not available to a plan participant under § 1132(a)(1)(B). *See e.g. International Union UAW Local 91 v. Park–Ohio Indus., Inc.,* 876 F.2d 894 (Table), 1989 WL 63871, 1989 U.S.App. LEXIS 8677 (6th Cir. June 15, 1989); *Harsch v. Eisenberg,* 956 F.2d 651, 655 (7th Cir.1992); *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210, 1220 (4th Cir.1990); *Med-*

*ina v. Anthem Life Ins. Co.,* 983 F.2d 29, 33 (5th Cir.1993). The Court finds that extracontractual damages for anticipated tax losses and lost growth income are not recoverable under § 1132(a)(1)(B).

■ The Court next addresses plaintiffs' motion wherein plaintiffs move for partial summary declaratory judgment that the Court has the equitable power under ERISA to require the defendants to take all necessary action to enter into a closing agreement with the Internal Revenue Service pursuant to the Employment Plans Closing Agreement Program (CAP).[4] In so doing, plaintiffs contend that there exists the possibility of correcting all plan defects and of restoring tax qualification of the balance of contributions allegedly owed to plaintiffs.

After reviewing the documents submitted by the parties, the Court is unable to determine whether or not CAP is even available to defendants to correct alleged plan defects. However, if CAP is available, it appears to be an appropriate equitable remedy to redress injuries to plaintiffs not otherwise recoverable under ERISA. Section 1132(a)(3) permits a participant or beneficiary to obtain "other appropriate equitable relief" not only for violations of the terms of the plan, but for violations of "any provision of this subchapter." Plaintiffs have alleged violations of fiduciary duties set forth in § 1104. *See* Complaint at ¶ 74(D).[5] Thus, plaintiffs may obtain equitable relief to redress such violations.

The Court concludes that it has the power to order the equitable relief requested. As plaintiffs ask only for a declaration of the Court's power to order such a remedy, the Court will grant plaintiffs' motion for partial summary judgment.[6]

THEREFORE, for the foregoing reasons, good cause appearing, it is

---

**4.** The CAP program is published in Chapter 11 of Internal Revenue Manual 7(10)54.

**5.** Plaintiffs allege that defendants breached their fiduciary duties by "failing to administer the Profit Sharing Plan for the exclusive benefit of all participants and beneficiaries, and failing to act with the appropriate care, skill, and prudence of

a reasonable man as required by 29 U.S.C. § 1104." Complaint at ¶ 74(D).

**6.** It is within the sound discretion of the court to award *appropriate* equitable relief. At this time, plaintiffs have not demonstrated to the Court that defendants are even eligible to participate in the CAP program.

ORDERED that defendants' motion for partial summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that plaintiffs' motion for partial summary judgment be, and hereby is, GRANTED.